UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARAG G. PATIL,

       Plaintiff,                          Case No. 23-10631

v.                                        HON. MARK A. GOLDSMITH

THE BOARD OF REGENTS OF THE
UNIVERSITY OF MICHIGAN, et al.,

Defendants.
_____/

**OPINION & ORDER
(1) GRANTING THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS (Dkt. 27)
AND (2) GRANTING IN PART AND DENYING IN PART THE BOARD OF
REGENTS'S MOTION TO DISMISS (Dkt. 26)**

Plaintiff Parag G. Patil, a medical professor at the University of Michigan, alleges that he was the victim of employment retaliation, discrimination, and violation of his due process and free speech rights. Before the Court are motions to dismiss filed by Defendant Board of Regents of the University of Michigan (Board of Regents) (Dkt. 26) and Defendants Marie Lozon, Karin Muraszko, and Stephen Sullivan (Individual Defendants) (Dkt. 27).[1] For the reasons that follow, the Court grants the Individual Defendants' motion in its entirety and grants in part and denies in part the Board of Regents's motion.[2]

---

[1] The briefing also includes Patil's response to the Board of Regents's motion to dismiss (Dkt. 35), Patil's response to the Individual Defendants' motion to dismiss (Dkt. 32), the Board of Regents's reply (Dkt. 38), and the Individual Defendants' reply (Dkt. 39).

[2] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).

1

## I.  BACKGROUND

Patil is a neurosurgeon and associate professor with tenure at the University of Michigan Health System (UMHS). Second Amended Complaint (SAC) ¶¶ 1, 2, 33 (Dkt. 20). Defendants Lozan, Muraszko, and Sullivan are employees of the Board of Regents and the UMHS: Lozan as the chief of staff, Muraszko as the chair of neurosurgery, and Sullivan as the neurosurgery chief of service. Id. ¶¶ 10–12. Muraszko was also Patil's supervisor and responsible for conducting his annual reviews. Id. ¶¶ 67, 93, 114, 131.

Patil alleges that Defendants retaliated against him after he began raising concerns related to transparency and accountability within the Department of Neurosurgery and the Office of Clinical Affairs (OCA) with University of Michigan "leadership" in 2010. Id. ¶¶ 48–50. He alleges various forms of retaliation throughout the course of his employment, including the denial of his tenure in 2012, id. ¶ 72; decreased compensation, id. ¶¶ 69–70, 78; unequal access to the operating room, id. ¶¶ 91–93; imbalanced assignment of referred patients, id. ¶¶ 106–112; incorrect federal reporting, id. ¶¶ 98–105; and inaccurate performance reviews, id. ¶¶ 113–120. Patil also alleges that he has been subjected to multiple investigations that were improperly conducted, including a Medical Staff Quality Committee Review, a Departmental Investigation, an Institutional Investigation, a "Fair Hearing," and an appellate review. Id. ¶¶ 203, 215.

After an initial delay, Patil was eventually promoted to an associate professor with tenure in 2015. Id. ¶ 72. Although Patil remains an associate professor with tenure, he alleges that his pay was reduced by 40% and he was stripped of his clinical roles, administrative positions, and clinical research positions in March 2023. Id. ¶¶ 121–122. He also alleges that Muraszko and the Board of Regents have blocked any future promotion to full professor. Id. ¶ 90.

2

In addition to retaliation, Patil alleges discrimination based on his hereditary and progressive hearing disability, for which he received a formal diagnosis in November 2012. Id. ¶ 128. Patil wears hearing aids, but his disability still makes it difficult for him to communicate in noisy environments and recognize audio alerts. Id. ¶¶ 128–129. Patil contends that Muraszko, his supervisor, has been aware of his hearing difficulties since 2010, when he first sought her help with communication challenges. Id. ¶ 131. Yet Patil alleges he has not received reasonable accommodations for his disability and instead has been "humiliated" and "verbally abused" by the Defendants for his difficulties hearing and communicating. Id. ¶¶ 134, 140–141.

Patil also brings a claim for sex discrimination, alleging "disparate treatment in the terms and conditions of his employment compared to female colleagues." Id. ¶ 148. When disputes have arisen between Patil and other colleagues, Patil alleges that Muraszko and Lozon have sided with Patil's female colleagues over him without first seeking his account of events. Id. ¶ 149. Patil also alleges that he was once told by Muraszko that he is "the wrong race and the wrong sex to have equity in compensation." Id. ¶ 76.

Patil brings claims against all Defendants under the Americans with Disabilities Act of 1990, 42 U.S.C. § 1201 et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.; and the United States Constitution through 42 U.S.C. § 1983 for violations of due process and freedom of speech.[3] For the reasons that follow, the Court grants the Individual Defendants' motion to dismiss with respect to all claims. The Court also grants the Board of Regents's motion to dismiss with respect to Patil's ADA, due process, and freedom of speech claims (Counts I, V, IX, and X), but denies the motion with respect to its Title VII claims (Counts III and VII).

---

[3] Patil's SAC also brought various claims under Michigan state law (Counts II, IV, VI, VIII, XI-XV), but he has since voluntarily dismissed these claims without prejudice (Dkt. 42).

3

## II. ANALYSIS

The Court begins by addressing Patil's claims against the Individual Defendants, and then considers his claims against the Board of Regents.

### A. Patil's Claims Against the Individual Defendants

Patil's claims against the Individual Defendants under the ADA and Title VII must be dismissed because employees and supervisors cannot be held individually liable under either statute. Patil's claims under 42 U.S.C. § 1983 must be dismissed because Patil does not adequately allege a violation of his rights to freedom of speech or procedural due process.

#### 1. ADA and Title VII Claims

The ADA defines an employer as "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person." 42 U.S.C.A. § 12111 (West). Title VII defines an employer almost identically. 42 U.S.C.A. § 2000e (West). Because Title VII and the ADA define employer "essentially the same way," the analysis for whether someone is an employer is the same under both Acts. Satterfield v. Tennessee, 295 F.3d 611, 617 n.5 (6th Cir. 2002) (punctuation modified).

Patil does not allege that the Individual Defendants qualify as employers under the Title VII and ADA definitions, see SAC, but even if he did, this allegation would fail. The United States Court of Appeals for the Sixth Circuit has held that individuals cannot be held liable as employers under Title VII or the ADA, despite the inclusion of the clause "and any agent of such person" in the definitions. See Wathen v. Gen. Elec. Co., 115 F.3d 400, 405 (6th Cir. 1997). In Wathen, the court acknowledged that that "a narrow, literal reading of the agent clause . . . does imply that an employer's agent is a statutory employer for purposes of liability." Id. (quoting Tomka v. Seiler Corp., 66 F. 3d 1295, 1314 (2d Cir. 1995)). But relying on legislative history and statutory

4

interpretation, the court ultimately concluded that "Congress did not intend individuals to face liability under the definition of 'employer' it selected for Title VII." Id. at 406. This binding Sixth Circuit precedent requires the ADA and Title VII claims to be dismissed against the Individual Defendants.

### 2. Freedom of Speech Claim

Patil's freedom of speech claim against the Individual Defendants must also be dismissed. Patil alleges that the Individual Defendants retaliated against him in violation of his right to freedom of speech under the First Amendment. SAC ¶¶ 687. But the First Amendment only protects Patil's right, as a public employee, to freedom of speech regarding matters of public concern. See Connick v. Myers, 461 U.S. 138, 140 (1983). Patil alleges he was retaliated against for complaining about superiors, requesting information, and requesting a Fair Hearing, SAC ¶¶ 691–692, none of which is a matter of public concern.

Speech addresses a matter of public concern if it relates to "any matter of political, social, or other concern to the community." Chappel v. Montgomery Cnty. Fire Prot. Dist. No. 1, 131 F.3d 564, 574 (6th Cir. 1997) (punctuation modified). Here, Patil's alleged speech relates solely to his own employment, which is not of concern to the community. And as the United States Supreme Court has stated, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to an employee's behavior." Id. at 147 (punctuation modified). Patil's speech is, therefore, not protected speech, and his First Amendment claim against the Individual Defendants is dismissed.

### 3. Procedural Due Process Claim

The Court also grants the Individual Defendants' motion to dismiss as to Patil's procedural due process claim. The Fourteenth Amendment prohibits state actors from depriving individuals

5

of life, liberty, or property without due process of law. See Quinn v. Shirey, 293 F.3d 315, 319 (6th Cir. 2002). To state a procedural due process claim, Patil must show that he had (i) a life, liberty, or property interest requiring protection under the Due Process Clause, (ii) a deprivation of that interest, and (iii) that the deprivation occurred without adequate process. See Fields v. Henry Cnty., 701 F.3d 180, 185 (6th Cir. 2012).

Courts in the Sixth Circuit address procedural due process claims in two steps, first asking "whether a constitutionally protected . . . interest is at stake," and then considering the "procedures necessary to protect that interest." Kaplan v. Univ. of Louisville, 10 F.4th 569, 577 (6th Cir. 2021). Patil's procedural due process claim fails at step one because neither of the interests he alleges—a property interest in his medical staff privileges, SAC ¶¶ 640, 648–650, and a liberty interest in his "good name, reputation, honor, integrity, and character, and in pursuing his chosen profession," SAC ¶ 659—is constitutionally protected.

"The Constitution does not create or define property interests." Kaplan, 10 F. 4th at 577. "[C]ourts identify property interests by reference to independent sources of entitlement such as state law or a contract between the parties." Id. Patil argues that his interest in his medical staff privileges is a protected property interest because "the hospital's bylaws detail an extensive procedure to be followed when corrective action, suspension, or reduction of these privileges is going to be taken." SAC ¶ 640. Although it is not entirely clear, Patil seems to argue that the hospital's bylaws constitute a contract giving rise to a protected property interest. Id. The Individual Defendants, on the other hand, argue that "medical staff bylaws do not create cognizable property interests." Br. Supp. Indiv. Def. Mot. at 15. The Individual Defendants are correct.

A similar argument to Patil's was recently considered and rejected by another judge in this district. See Doe v. Board of Regents of Univ. of Mich., No. 21-cv-13032, 2022 WL 18860462,

6

at *15–*16 (E.D. Mich. June 16, 2022). Like Patil, the plaintiff in Doe was also a tenured professor at the UMHS bringing a procedural due process claim against the Board of Regents and various individual defendants. Id. at *1–*2. The Doe court rejected the plaintiff's argument that he had a protected property interest in his clinical privileges, finding that neither the hospital bylaws nor "customs and practices" at Michigan Medicine gave rise to a protected property interest. Id. at *5–*6. The Doe Court relied heavily on a prior Sixth Circuit case holding that "Medical Staff Bylaws do not create a contractual relationship in Michigan." See Bhan v. Battle Creek Health Sys., 579 F. App'x 438, 448 (6th Cir. 2014). The Sixth Circuit noted, among other things, that such by-laws may be amended "at any time." Id. at 449.

In his response, Patil cites various cases in other circuits holding that hospital bylaws gave rise to a protected property interest in medical-staff privileges. Pl. Resp. to Indiv. Def. Mot. at 4–5 (citing Shahawy v. Harrison, 875 F.2d 1529, 1532 (11th Cir. 1989) and Northeast Ga. Radiological Assocs. v. Tidwell, 670 F.2d 507, 511 (5th Cir. Unit B 1982)). Out-of-circuit cases, however, are not binding on this Court, and the only Sixth Circuit case cited by Patil involved parties who stipulated that the plaintiff had a constitutionally protected property interest in his membership on the attending medical staff. See Yashon v. Hunt, 825 F.2d 1016, 1021 (6th Cir. 1987). Because the parties here have not entered into a similar stipulation, Yashon does not help Patil's argument. This Court agrees with the analysis in Doe and finds that the hospital bylaws did not give rise to a protected property interest in Patil's medical staff privileges.

In his response, Patil raises two other bases for a claimed violation of a property interest, neither of which is set out in the SAC. First, Patil argues that the Defendants "deprived him of constitutionally protected property rights he had in his tenured employment as an Associate Professor of Neurosurgery." Pl. Resp. to Indiv. Def. Mot. at 12. Second, Patil argues that

7

Defendants deprived him of protected rights he had in his tenured employment by substantially cutting his pay.  Pl.'s Resp. to Indiv. Def. Mot. at 12.  Because Patil did not assert in his SAC that he had a protectible interest based on tenure or being immunized from paycuts, he may not do so now in an attempt to amend his pleading through his response brief.  See Jocham v. Tuscola Cnty., 239 F. Supp. 2d 714, 731 (E.D. Mich. 2003).  Patil amended his complaint twice (see Dkts. 1, 5, and 20) and failed to articulate his claim in the two ways he now raises.  The only proper way for Patil to recharacterize his protectible interest would have been to file a motion for leave to amend his complaint for a third time, which he did not.  See Blanton v. Domino's Pizza Franchising LLC, 962 F.3d 842, 852 (6th Cir. 2020).

Even if the Court did consider Patil's arguments, they would both fail.  Patil's tenure argument would fail because Patil admits in his SAC that he is still an associate professor with tenure, SAC ¶ 33, and his response does not state otherwise.

Patil's pay-cut argument would fail because Patil provides no valid explanation for why his full salary is a protected interest.  As explained above, protected status must arise from an "independent source[] of entitlement such as state law or a contract."  Kaplan, 10 F. 4th at 577. "Neither a 'unilateral expectation' to enjoy the alleged property interest nor an 'abstract need or desire for it' is enough."  Id. at 578 (quoting Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972)).  Here, Patil offers no facts showing that his salary was anything more than discretionary, or a "unilateral expectation" on his part.  He argues vaguely that his salary cannot be "removed" except in accordance with the Board of Regents's bylaws. Pl. Resp. to Indiv. Def. Mot. at 13.  But such bylaws are no different, in substance, from the hospital bylaws, which the Court rejected above as somehow providing a basis for a protectible property interest.  Like hospital bylaws, the Board of Regents's by laws are freely amendable, a "reality that occurs with

some frequency." Coal. to Def. Affirmative Action, Integration & Immigrant Rts. & Fight for Equal. By Any Means Necessary v. Regents of Univ. of Michigan, 701 F.3d 466, 481 (6th Cir. 2012). Patil has not properly alleged a protectible property interest in his full salary.

One other alleged interest—a liberty interest—must be considered by the Court. In his SAC, Patil alleges a protected liberty interest in his "good name, reputation, honor, integrity, and character, and in pursuing his chosen profession," SAC ¶ 659. While the Fourteenth Amendment does protect a person's good name, reputation, honor, and integrity in certain circumstances, "[s]ome alteration of a right or status previously recognized by state law, such as employment, must accompany the damage to reputation." Quinn, 293 F.3d at 319–320 (punctuation modified).

Citing Doe, the Individual Defendants argue that Patil has not adequately pleaded a claim for deprivation of a liberty interest, reasoning that Patil had failed to allege that he had been terminated or that he had requested and was denied a name-clearing hearing. See Br. Supp. Indiv. Def. Mot. at 16. They further argue that "even defamation that would impair the plaintiff's employment opportunities is insufficient to invoke due process concerns." Id. (citing Quinn, 293 F.3d. at 319)

Patil does not address these arguments in his response—in fact, he does not discuss his alleged liberty interest in his response at all. See Pl. Resp. to Indiv. Def. Mot. The Individual Defendants correctly argue that Patil's failure to address these arguments means that he has abandoned his claim based on a claimed liberty interest. See Indiv. Def. Reply at 2; Davis v. Detroit Downtown Dev. Auth., No. 17-cv-11742, 2021 WL 4350533, at *4 n.4. (E.D. Mich. Sept. 24, 2021) ("In a variety of contexts, courts have construed silence by a civil litigant in the face of an argument made in the opposing party's motion as an abandonment or waiver of any challenge

9

to it."). Patil's abandonment of the claim based on a liberty interest in his good name requires dismissal of that claim.

Patil's procedural due process claim, whether based on a property interest or a liberty interest, must be dismissed.

### B. Claims Against the Board of Regents

As discussed below, Patil's claims under the ADA and 42 U.S.C. § 1983 must be dismissed because the Board of Regents is entitled to Eleventh Amendment Immunity. The only claims Patil brings against the Board of Regents that are not barred by Eleventh Amendment Immunity are those under Title VII.

#### 1. ADA and Section 1983 Claims

The Court grants the Board of Regents's motion to dismiss as to Patil's ADA and Section 1983 claims based on Eleventh Amendment immunity. The Eleventh Amendment prohibits suits against states "in most cases," unless states waive their immunity or Congress removes it by statute, a process commonly referred to as abrogation. See Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tenn., 63 F.4th 510, 515 (6th Cir. 2023). Eleventh Amendment immunity "extends to departments and agencies that are arms of the state." Id. The Sixth Circuit has held that the Board of Regents is entitled to Eleventh Amendment Immunity. See Doe v. Bd. of Regents of Univ. of Mich., No. 22-2095, 2023 WL 5095799, at *2 (6th Cir. Aug. 9, 2023); see also Est. of Ritter v. Univ. of Mich., 851 F.2d 846, 851 (6th Cir. 1988). Therefore, a citizen is barred from suing the Board of Regents unless "Congress has abrogated the state's immunity or . . . the state consents to the suit." Doe, 2023 WL 5095799, at *2.

There is no dispute that the Board of Regents has not consented to Patil's suit, leaving only the issue of abrogation. The Supreme Court has held that Congress has not abrogated the state's

10

immunity in Title I ADA claims, such as those brought in this case. See <u>Bd. of Trustees of Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 360 (2001) ("We decide here whether [state employees] may recover money damages by reason of the State's failure to comply with the provisions of Title I of [the ADA] . . . . We hold that such suits are barred by the Eleventh Amendment.").

Similarly, the Sixth Circuit has held that Congress has not abrogated the state's immunity in claims brought under 42 U.S.C. § 1983. In <u>Doe</u>, the district court granted the Board of Regents's motion to dismiss the plaintiff's § 1983 claim, holding that "Eleventh Amendment immunity bars Plaintiff's claims for damages against Defendant Board of Regents." 2022 WL 18860462 at *3. The district court explained that "the Board of Regents is a state entity" and that Congress has not abrogated immunity from § 1983 claims. <u>Id.</u> The Sixth Circuit affirmed. 2023 WL 5095799 at *2. Patil's claims against the Board of Regents under the ADA and § 1983 must be dismissed.

Patil's Title VII claims, however, are not barred by Eleventh Amendment Immunity. The Supreme Court has held that Congress abrogated the state's immunity from Title VII suits in its 1972 amendments to Title VII of the Civil Rights Act of 1964, which the Board of Regents does not dispute. See <u>Fitzpatrick v. Bitzer</u>, 427 U.S. 445, 452 (1976). Thus, Patil's Title VII claims (Counts III and VII) are not barred by the Eleventh Amendment.

**2. Title VII Sex Discrimination and Retaliation Claims**

Patil brings sex discrimination and retaliation claims under Title VII, which makes it an "unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ." SAC ¶¶ 564–570, 605–622; 42 U.S.C. § 2000e-2(a)(1). A plaintiff may prove sex discrimination through direct or indirect evidence. See <u>Hardy v. Eastman Chem. Co.</u>, 50 F. App'x 739, 741 (6th Cir. 2002).

11

Direct evidence of discrimination is evidence that, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 238 (6th Cir. 2005) (punctuation modified). Here, Patil alleges that Muraszko told him during an equity evaluation that he is "the wrong race and the wrong sex to have equity in compensation." Id. ¶ 568(h). This is direct evidence of discrimination because it supports the conclusion that Patil's sex was at least a motivating factor in his salary determination, which Patil alleges was cut by forty percent in March 2023. SAC ¶¶ 121–126.

Patil also alleges indirect evidence of discrimination. To establish a prima facie case of discrimination through indirect evidence, Patil must show that (i) he is a member of a protected group, (ii) he was subjected to an adverse employment decision, (iii) he was qualified for the position, and (iv) he was replaced by a person outside the protected class, or similarly situated non-protected employees were treated more favorably. Regan v. Faurecia Auto. Seating, Inc., 679 F.3d 475, 481 (6th Cir. 2012). The Board of Regents does not seem to dispute that Patil has established the first and third elements. Therefore, the Court only addresses elements two and four.

Patil alleges that he "has experienced discrimination based on his sex, male, because of disparate treatment by [Muraszko], [Lozon], and University Administration in the terms and conditions of his employment compared to female colleagues." Id. ¶ 148. He alleges that members of leadership apply a "double standard" based on sex when handling employee disputes. Id. ¶ 151. According to Patil, "all the targets of OCA investigations are male" and the OCA "applies discriminatory male gender-based stereotypes . . . without evidence or unbiased investigation." Id. ¶ 157. Patil alleges that Muraszko and Lozon have sided with female colleagues over Patil without first seeking his account of events. Id. ¶ 149. Patil references a particular dispute with a female colleague involving an "MRI OR." Id. ¶¶ 150–151. Patil alleges that Lozan required him to be

12

evaluated by an OCA psychiatrist, with the onus placed on him to resolve a conflict with a female colleague, but did not require the female colleague to meet with Patil to attempt to resolve the misunderstanding. Id. ¶ 151. Taken as true, these allegations suffice to support the fourth element of a prima facie case of sex discrimination—that is, they assert that similarly situated non-protected employees were treated more favorably than Patil.

Patil also alleges an adverse employment action—the remaining disputed element of the prima facie case of discrimination. An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." White v. Burlington N. & Santa Fe R.R. Co., 364 F.3d 789, 797 (6th Cir. 2004), (punctuation modified). Here, Patil alleges that the pattern of discrimination in OCA disciplinary actions—including the double standard based on sex—led to his removal from medical staff membership in 2023. SAC ¶ 568(f). Patil's removal from medical staff precluded him from performing operations, seeing patients clinically, and accessing patient medical records. Id. ¶ 568(j). Such significant changes in Patil's job responsibilities meet the definition of an adverse employment action.

Patil also brings a claim for retaliation under Title VII. To establish a prima facie case of retaliation, a plaintiff must show that (i) they engaged in a protected activity under Title VII, (ii) the exercise of the protected activity was known by the plaintiff's employer, (iii) the employer took an adverse employment action against the plaintiff, and (iv) there was a causal connection between the adverse employment action and the protected activity. Hunter v. Sec'y of U.S. Army, 565 F. 3d 989, 995–996 (6th Cir. 2009).

According to Patil, he reported the discrimination described above to University of Michigan leadership multiple times, and leadership retaliated against him as a result. SAC ¶ 609–

13

622. Patil's reports of discrimination constitute protected activity, establishing the first element of a prima facie case of retaliation. See Taylor v. Geithner, 703 F.3d 328, 339 (6th Cir. 2013) (finding that a plaintiff who filed several discrimination complaints engaged in protected activity). The Board of Regents does not dispute this point or that it was aware of the protected activity. But the Board of Regents does argue that Patil has not properly alleged an adverse employment action.

An adverse action in the context of a retaliation claim is one "that a reasonable employee would have found [to be] . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Garner v. Cuyahoga Cnty. Juvenile Ct., 554 F.3d 624, 639 (6th Cir. 2009) (punctuation modified). Patil alleges multiple adverse employment actions, but the Court focuses on those occurring in March 2023: allegations that Patil was stripped of all clinical roles, administrative positions, and clinical research positions, and had his salary cut by forty percent.[4] See SAC ¶¶ 121–126; 620. These constitute adverse employment actions because they are severe enough to dissuade a reasonable worker from reporting discrimination.

Still, the Board of Regents argues that Patil failed to exhaust administrative remedies as to these adverse employment actions. Br. Supp. Def. Board of Regents Mot. at 23. As a prerequisite to seeking judicial review, Title VII requires a plaintiff to file a charge of discrimination with the EEOC within 300 days of an alleged unlawful employment practice. Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 101 (2002); Puckett v. Tenn. Eastman Co., 889 F.2d 1481, 1486 (6th Cir. 1989). Patil filed a charge of discrimination with the EEOC on January 4, 2023, EEOC Notice

---

[4] Because Patil only needs to allege one adverse employment action for this claim to survive the Board of Regents's motion to dismiss, the Court focuses on the alleged adverse actions that the Board of Regents does not argue are time-barred.

of Charge of Discrimination at PageID.1196 (Dkt. 26-2)[5], and received notification of his right-to-sue letter on February 1, 2023, SAC ¶ 16. This means that Patil's 300-day window reaches back to March 2022. The Board of Regents argues that Patil has failed to exhaust his administrative remedies with respect to his March 2023 allegations because they occurred after he filed his charge with the EEOC.

This argument fails because retaliatory actions that occurred after an administrative filing can be reviewed for the first time in the district court if the retaliation claim is reasonably related to claims that the plaintiff brought before the EEOC. See Delisle v. Brimfield Twp. Police Dep't, 94 F. App'x 247, 252–254 (6th Cir. 2004); Dasilva v. Esper, et al., No. 20-cv-11358, 2022 WL 403272, at *8 (E.D. Mich. Feb. 9, 2022). Here, Patil's allegations of adverse employment actions taken in March 2023 are reasonably related to the first EEOC claim he filed, so his claim does not fail for lack of exhaustion. Further, as these actions occurred after Patil's 300-day window began in March 2022, they are not time-barred.

For these reasons, Patil has successfully pleaded Title VII claims for sex discrimination and retaliation against the Board of Regents.

### III.  CONCLUSION

For the reasons set forth above, the Court (i) grants the Individual Defendants' motion to dismiss in its entirety (Dkt. 27) and (ii) grants the Board of Regents's motion to dismiss with

---

[5] Patil does not specify the date on which he filed his EEOC charge in his SAC, but the Board of Regents attached the EEOC Notice of Charge of Discrimination they received as an exhibit. See EEOC Notice of Charge of Discrimination at PageID.1194–1202. When deciding a Rule 12(b)(6) motion, the Court may only consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). Patil refers to his EEOC charge in his SAC, SAC ¶ 15, and the EEOC charge is central to Patil's claims, so the Court can consider the Board of Regents's exhibit.

respect to Counts I, V, IX, and X but denies the motion with respect to Counts III and VII (Dkt. 26).

SO ORDERED.

Dated: January 18, 2024  
       Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge